Mr. Verano. Thank you, your honor. This is a social security case. In this social security case, the administrative law judge made three sets of errors. She selectively reviewed evidence of Ms. Morgan's back and neck pain. She improperly evaluated the intensity, persistence and limiting effects of Ms. Morgan's symptoms, which is what we used to call credibility determination. And she also erred in failing to include in this particular case, a set of manipulative limitations. The first set of mistakes was the judge's selective review of Ms. Morgan's back and neck pain problems. And there are several mistakes that she made. I made a list and I counted 15 different mistakes that she made in doing that, some of them more significant than others. But part of that, there were six different assessments by her primary care physician, Dr. Kozarik, who assessed two to three plus or three plus tenderness in the lumbar spine and on the tenderness scale that the doctors use, it goes from zero to three with zero being nothing and three being the worst there is. So there were six different times where she had at least two to three plus tenderness that the ALJ didn't even mention. There was another examination where the ALJ mentioned only normal findings, didn't mention that Ms. Morgan's straight leg test was positive. There was another time in summarizing the doctor found one plus spasms in the thoracic and lumbar spines, which the ALJ did mention that, but the ALJ did not mention that he found two plus spasms in the cervical spine bilaterally. Mr. Vranek, can I lend an impression to your argument and you can push back on me? It seems to me in light of the concession that you made on page three of your brief that you're not challenging that the back issues, the back and neck pain issues are a severe impairment for purposes of step two, okay? That you're not challenging that, that what you need to do is show that these omissions as you're outlining from the ALJ opinion affected the RFC determination. Right. Okay. Right. And can you, what would help me is if you can link the observations that you're making about the omissions to functional limitations that you think should have been in there. Because we've made clear in cases like Jones versus Estrue that an ALJ does not commit reversible error for failing to identify everything in the medical record. Right. Because a contrary position would basically impose a typing rule. Right. Well, with the tenderness issues, for example, when a person has three tenderness on the zero to three scale, that tells you that there's pain in that area. And that tells you that also because of that pain, the person may have trouble focusing. So there's no question about that at that level of generality. And there's no question that the ALJ recognized that Ms. Morgan unfortunately suffers from meaningful back pain. No doubt about any of that. So the only question is, is the light work RFC, does it reflect legal error under the substantial evidence standard? And it seems to me that you need to point to evidence that shows that the tenderness and the, you know, this and that result in an additional functional limitation. I can't point to any evidence that says, you know, Dr. So-and-so said that three plus tenderness means that she can only stand for four hours a day or only two hours a day. I can tell you that all of the things that she omitted are findings that relate to some kind of pain or some kind of abnormality in the body that reduces a person's function. And in her case, and I think it's very, very important that the judge found her to have a light RFC. The she can be on her feet six hours out of an eight hour day and can lift up to 20 pounds occasionally and 10 pounds frequently. All of these things that were omitted are indications of abnormalities that lead to limitations and function. And for her to be awarded benefits in this case, she can be awarded benefits even if she's found to be capable of doing sedentary work. So the issue is when you put all of these omitted findings on the scales, does that tip the scales enough so that it suggests a limitation to sedentary activity? We're not claiming that she's bedridden, but if because of her age and her education and her past work experience, if she is found to be limited to sedentary activity, then by the commissioner's own regulations, they direct a finding that she's disabled. So that's that's the significance of all of those omitted findings. The ALJ also made some mistakes in evaluating Ms. Morgan's symptoms. Those mistakes that she made with respect to the back and the neck limitations also affected her credibility evaluation. In fact, most of them were from the credibility evaluation. She also played doctor, if you will, exceeded her expertise in a couple of conclusions. One was that there were no imaging studies that showed nerve root impingement. And I'm not a doctor. I'm not qualified to say that a person has no pain unless there is nerve root impingement. But I am qualified to say that there's nothing in the record that suggests that people can have pain without nerve root impingement. The ALJ also wrote that she also discredited Ms. Morgan's allegations because she has not undergone surgery. That's a problem. She discredited her because there's been a little in the way of actual treatment without an explanation of why that violates Social Security ruling 16-3P, which says in order to do that, you have to ask for an explanation. That's been the law for a long time, even with SSR 96-7, which preceded 16-3. ALJ also Ms. Morgan's activities of daily living. I see that I'm into my rebuttal time, so I'm going to stop at this point. Thank you, Counselor. Ms. Fishbelle? Good morning, Your Honors, or afternoon, rather, and Erin Brechtelsbauer on behalf of the Commissioner of Social Security. I'd like to start with something that Mr. Verana does not address, which directly goes to your prior questions, Your Honor. No doctor opined that Ms. Morgan had disabling functional limitations or even that she was limited to a range of sedentary work, which is what Mr. Verana now argues she should be limited to. In fact, Mr. Verana represented Ms. Morgan throughout the from her treating or even an examining physician, despite the fact that the only medical opinions in the records, those from state agency medical consultants, Dr. Eskonen and Dr. Whitley, found she was capable of a range of light work. The ALJ reasonably relied on those opinions in finding her capable of a range of light work, adopting their exertional limitations, which Mr. had greater postural limitations, specifically as to climbing ladders, ropes, and scaffolds, based on a review of the record as a whole, including Ms. Morgan's subjective reports. Now, Mr. Verana doesn't respond to that issue. Ms. Morgan did not substantively address the opinions or contest the ALJ's consideration of them, but merely asserts without citation or support that the ALJ had evidence before her that Dr. Whitley and Dr. Eskonen did not, and that an ALJ should not merely parrot opinions from a physician. But as I mentioned, the ALJ didn't merely parrot these opinions. She accepted some of the limitations that were supported and consistent with the record, and rejected others, which would include the environmental limitations that Dr. Whitley and Dr. Eskonen opined, because there was no basis for those limitations in the record, a point that Ms. Morgan does not contest. As to the evidence that the ALJ had and the Whitley issued her opinion in October of 2016, and indicated that she reviewed everything in the file before affirming Dr. Eskonen's opinion that Ms. Morgan could perform a range of light work, and that evidence included records through July of 2016, meaning that the only evidence Ms. Morgan now highlights in her briefing that was not in the record at the time Dr. Whitley issued her opinion were two incidences of back tenderness, which Your Honor pointed out does not equate to any limitation. And the mere fact that Ms. Morgan had back tenderness, or two additional instances, again, does not mean she should be limited to sedentary work. Regarding the specific items Ms. Morgan highlights in the record, the ALJ addressed both evidence supporting and against a finding of disability here. The ALJ did not only address positive findings, but considered Ms. Morgan's MRI and CT and the findings that the radiologist summarized in her impression section, which included some age-related degenerative changes, and I believe a herniated disc. And also considered that Ms. Morgan had some abnormal findings at her consultative exam, including limited range of motion and some spasms in her low back. What Ms. Morgan is doing is and accusing doing what she accuses the ALJ of doing, which is highlighting specific findings and saying without context that those findings support greater limitations than the ALJ found. But if you look closer at these findings, most of them the ALJ did discuss, just not necessarily to the degree Ms. Morgan would have liked. But as Your Honor pointed out, this is not a typing test. The ALJ could not possibly write every abnormal finding or every summary of every MRI in every case that would be onerous and implausible, even in cases where there, like this case, where there's not a huge record. It's still an extensive amount of evidence that the ALJ would have to type up and would not add anything to the ALJ's analysis. The ALJ can still provide a picture of her logic and her logical bridge, as this Court has said, between the evidence and her decision without identifying every discrete exam finding in either direction. Now, as to the evidence the ALJ did not specifically address, again, those aren't functional limitations. Tenderness in someone's back does not mean they cannot walk or lift or carry a certain amount. And again, no doctor here indicated that Ms. Morgan's tenderness equated to that. And that tenderness is actually the only abnormal finding from her primary care doctor who treated her back pain in otherwise absolutely normal exams, including negative straight leg raise tests, which goes to the next point, which is that most of these findings that Ms. Morgan highlights are unique. They did not occur again in the record. There was one positive straight leg raise test among a sea of negative straight leg raise tests, which is a test for neck pain. There was one incidence where she had tight neck muscles. But again, the rest of her exam at that time to her neck was normal. And that was actually her last visit, second visit, was a second and last visit for her neck pain. She did not seek additional treatment for her neck pain after that time. The ALJ properly considered the record as a whole and the medical evidence as a whole in finding that Ms. Morgan could perform a range of light work. As to Ms. Morgan's arguments regarding the ALJ's subjective symptom analysis, again, the ALJ considered the record as a whole. So Ms. Morgan highlighting things like the ALJ mentioning the lack of nerve root impingement and lack of surgery is really asking this court to consider the ALJ's analysis piecemeal and in a vacuum, which goes against the context the ALJ provided and also this court's precedent requiring that ALJ decisions must be as a whole. The ALJ considered Ms. Morgan's medical records as a whole in finding that they did not support Ms. Morgan's allegations of disabling limitations. This was not merely one incidence of nerve root impingement, but also the fact that she consistently had normal gait and generally had normal muscle strength and only took Norco for pain. That goes to the surgery element where the ALJ did mention she didn't have surgery, but this is not like the cases cited by Ms. Morgan where her doctor said, don't have surgery, it won't help you, it will make things worse, or it's not a good option based on your history. And the claimants in those cases had much more extensive treatment like injections and physical therapy and pain management. Whereas here, the ALJ's mention of Ms. Morgan's lack of surgery was merely a part of the ALJ's consideration that her treatment as a whole was conservative in nature. She didn't require surgery. They didn't even make it to that step because she had little in the way of actual treatment, which was essentially pain medication, Norco, which is hydrocodone and Tylenol, and that treatment was consistent over the entire period. The ALJ did not err in considering Ms. Morgan's treatment history and in finding that her allegations of disabling pain were not wholly consistent with the record. Likewise, because the ALJ considered Ms. Morgan's treatment history, she was not finding Ms. Morgan failed to pursue treatment or failed to follow treatment, which would have required an inquiry into her reasoning. But the distinction there is a focus on the claimant's behavior. Here, the ALJ was merely recognizing the only treatment she required was conservative in nature, and she required little treatment. It's not a case where the ALJ said, oh, her doctor recommended surgery, but she didn't get it, so I'm going to hold that against her and not ask why. It's a case where no doctor recommended surgery. It didn't rise to that level, and so the ALJ properly recognized that in finding Ms. Morgan's conservative treatment history did not support her allegations of disabling pain. As a result, Ms. Morgan's request here is really a request that this court reweigh the evidence, which it has consistently found it cannot do, and I would ask this court to claim that. Because the ALJ reasonably relied on the medical opinions in the record, reasonably considered both medical evidence supporting and against a finding of disability, and Ms. Morgan's subjective reports, there is no error here. If there are no questions for the court, the Commissioner will rely on his briefing and respectfully ask the court to affirm the Commissioner's decision. Thank you. Thank you, Counselor. Mr. Verano? Thank you, Your Honor. With respect to the lack of doctor's opinions, the law is not that the claimant always loses unless there's a doctor's opinion that states more than what the ALJ found. The ALJ has independent duties. She is to independently review every case after fulfilling all of her duties, and those duties include doing proper symptoms evaluations and weighing the evidence in a balanced manner and confronting the evidence that does not support her decision. So that's what we're asking. We're not telling the court to order the ALJ to find that she's disabled, but the difference here between light and sedentary is the difference between an allowance and a denial, and we just would like the ALJ to make that decision by following all of the rules, following the regulations and the rulings, and this court's case law. The ALJ here made a lot of mistakes, and in fact, the various omissions that we pointed out, the commissioner said actually the ALJ did look at all those. Well, the ALJ didn't, and the things that we've said that she did not consider, she did not consider. So we're really down to a harmless error analysis. The court has to remand unless it can say with great certainty that the outcome would be the same. So with that, I respectfully ask the court to reverse the district court's affirmance and remand this case to the commissioner for another hearing and another decision. Thank you, counsel. Thanks to both counsel, and the case will be taken under advisement, and this is the final case for this morning, or this afternoon now, and we'll see you later. Bye. Thank you.